Christina N. Goodrich (SBN 261722)
K&L GATES LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: +1 310.552.5000
Facsimile: +1 310.552.5001
Email: christina.goodrich@klgates.com

*Attorneys for Plaintiffs Baxter Healthcare Corporation and Baxter Corporation Englewood*

[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAXTER HEALTHCARE CORPORATION and BAXTER CORPORATION ENGLEWOOD,<br><br>Plaintiffs,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY,<br><br>Defendant. | Case No. '17CV2186 BAS RBB<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiffs Baxter Healthcare Corporation and Baxter Corporation Englewood (collectively, "Baxter") file this complaint for patent infringement against Becton, Dickinson and Company ("BD"), and in support thereof allege and aver as follows:

## NATURE OF THE ACTION

1. This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., specifically including 35 U.S.C. § 271, based on BD's infringement of U.S. Patent No. 8,554,579 (Exhibit A); U.S. Patent No. 9,474,693 (Exhibit B); and U.S. Patent No. 9,662,273 (Exhibit C) (collectively, the "Patents-in-Suit").

## THE PARTIES

2. Baxter Healthcare Corporation is a Delaware corporation with its principal place of business at One Baxter Parkway, Deerfield, IL 60015.

3. Baxter Corporation Englewood is a Delaware corporation with its principal place of business at 9540 South Maroon Circle, Suite 400, Englewood, CO 80112.

4. On information and belief, BD is a New Jersey corporation with its principal place of business at 1 Becton Drive, Franklin Lakes, NJ 07417.

5. On information and belief, BD has a regular and established place of business at 11077 North Torrey Pines Road, La Jolla, CA 92037.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

7. This Court has personal jurisdiction over BD because, as described in more detail below, BD has committed and continues to commit acts of patent infringement giving rise to this action in this Judicial District.

8. This Court has personal jurisdiction over BD because BD has a regular and established place of business in La Jolla, California, which is in this Judicial District.

9. This Court has personal jurisdiction over BD because BD has harmed and continues to harm Baxter in this Judicial District by, among other things, making, using, offering for sale, and selling infringing products therein, and thereby has established minimum contacts such that the exercise of personal jurisdiction over BD does not offend traditional notions of fair play and substantial justice.

10. Venue is proper in this Judicial District under 28 U.S.C. § 1400(b) because BD, through its facility in La Jolla, California, has a regular and established place of business therein.

11. BD has admitted that its facility in La Jolla, California constitutes a regular and established place of business in a complaint filed in this Judicial District on July 10, 2017, in *The Regents of the University of California, et al., v. Affymetrix, Inc. et al.,* 17-cv-1394, Complaint at 3 (S.D. Cal. July 10, 2017) [ECF Docket No. 1].

12. BD has also committed acts of infringement in this Judicial District by making, using, offering for sale, and selling BD Cato™ Medication Workflow Solutions ("Cato"), the accused infringing instrumentality, therein.

13. A true and correct copy of a printout of the LinkedIn page of Alfonso Angeles Rodríguez located at https://www.linkedin.com/in/alfonso-angeles-rodr%C3%ADguez-79712855/, as accessed on October 24, 2017, is attached hereto as Exhibit D.

14. A true and correct copy of a printout of the LinkedIn page of Prasanna Parthasarathy located at https://www.linkedin.com/in/prasannaparthasarathy/, as accessed on October 24, 2017, is attached hereto as Exhibit E.

15. A true and correct copy of a printout of the LinkedIn page of Tony Chong located at https://www.linkedin.com/in/tonychongm/, as accessed on October 24, 2017, is attached hereto as Exhibit F.

16. Specifically, on information and belief, BD develops, tests, offers for sale, and sells Cato and its constituent components at its La Jolla, California facility. (*See* Ex. D, Rodríguez LinkedIn at p. 96 ("Software Engineer at BD," "Greater San Diego Area," "Feature development, bug fixing and collaboration with Cato."); Ex. E,

Parthasarathy LinkedIn at p. 99 ("General Manager/VP Pharmacy Solutions/Medication Adherence at BD," "San Diego, California," "World-Wide Vice President and General Manager for the $300M/~700+ employee Medication Adherence, Pharmacy and Supply Solution businesses. The Pharmacy Solutions platform is comprised of [] Cato . . ."); Ex. F, Chong LinkedIn at p. 102 ("Principal Supplier Quality Eng at BD," "San Diego, California," "BD CATO Medication Workflow Solutions transfer project core team member for supplier qualification.")).

## THE PATENTS-IN-SUIT

17. U.S. Patent No. 8,554,579 ("the '579 Patent"), titled "Management, reporting and benchmarking of medication preparation," was issued by the United States Patent and Trademark Office ("USPTO") on October 8, 2013. Baxter is the lawful owner by assignment of all rights, title and interest in the '579 Patent, including the right to sue for patent infringement and damages, including past damages. A true and correct copy of the '579 Patent is attached hereto as Exhibit A.

18. U.S. Patent No. 9,474,693 ("the '693 Patent"), titled "Work station for medical dose preparation system," was issued by the USPTO on October 25, 2016. Baxter is the lawful owner by assignment of all rights, title and interest in the '693 Patent, including the right to sue for patent infringement and damages, including past damages. A true and correct copy of the '693 Patent is attached hereto as Exhibit B.

19. U.S. Patent No. 9,662,273 ("the '273 Patent"), titled "Work station for medical dose preparation system," was issued by the USPTO on May 30, 2017. Baxter is the lawful owner by assignment of all rights, title and interest in the '273 Patent, including the right to sue for patent infringement and damages, including past damages. A true and correct copy of the '273 Patent is attached hereto as Exhibit C.

## FACTUAL BACKGROUND

20. A significant cause of patient harm in the United States is medication errors. One study published in 2012 estimated that harmful medication errors associated with injectable medications impact 1.2 million hospitalizations in the United

States annually. (Lahue, Betsy J. et al., "National Burden of Preventable Adverse Drug Events Associated with Inpatient Injectable Medications: Healthcare and Medical Professional Liability Costs," American Health & Drug Benefits Vol. 5, No. 7 (2012), at 1 (accessed on October 24, 2017, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4031698/)). These errors increase annual medical costs by between $2.7 billion to $5.1 billion, averaging $600,000 in extra costs per hospital. (*Id.*).

21. Many of these harmful medication errors originate in the hospital pharmacy where medications are prepared.

22. Injectable mediations, or intravenous ("IV") solutions, typically require sterile compounding, which means the pharmacist or technician must create, or "compound," a product according to the specific needs of a patient.

23. The sterile compounding process requires very careful measurement and mixing of medications to ensure proper amounts are dispensed to the patient.

24. Between 2004 and 2011, the Institute for Safe Medication Practices (ISMP) reported that serious compounding errors led to the death of multiple patients, and that the errors were mostly due to wrong concentration/strength, or wrong product or diluent. (*See* http://www.ismp.org/tools/bestpractices/TMSBP-for-Hospitals.pdf, accessed on October 24, 2017, at 11). ISMP stated that many of the errors "would have been identified prior to dispensing if preproduction checks or sterile processing technology would have been utilized." (*Id.*).

25. In its 2016-2017 Targeted Medication Safety Best Practices for Hospitals, ISMP recommends the "[u]se [of] technology to assist in the verification process (e.g., barcode scanning verification of ingredients, gravimetric verification, robotics, IV workflow software) to augment the manual processes." (*Id.*).

**Baxter's Solution to Prevent Errors in Compounding**

26. Baxter is a leading developer and manufacturer of renal and medical products, including pharmacy automation, software and services; acute renal care;

1  home and in-center dialysis; sterile IV solutions; infusion systems and devices; parenteral nutrition; biosurgery products and anesthetics; and perioperative care.

27. Baxter developed the DoseEdge Pharmacy Workflow Manager ("DoseEdge") to prevent harmful medication errors associated with injectable medications.

28. DoseEdge is an integrated system for managing IV and oral dose preparation activities. DoseEdge interfaces with the existing Pharmacy Information System to automate the process of routing, preparing, inspecting, tracking and reporting on IV and oral liquid doses.

29. DoseEdge includes barcode scanners, cameras, and gravimetric devices to automate the process of routing, inspecting, tracking, and reporting on IV or oral liquid medication doses in full support of ISMP Best Practices. (*See* http://www.baxtermedicationdeliveryproducts.com/pdf/product_brochures.pdf ("DoseEdge Brochure"), accessed on October 24, 2017, at 3).

30. DoseEdge was introduced to the market in 2008. Since its inception, DoseEdge has processed over 100 million doses and identified more than 4.7 million potential errors. (*See* http://www.baxtermedicationdeliveryproducts.com/pdf/ doseedge_statistics.pdf, accessed on October 24, 2017, at 1).

31. In fact, every 25 seconds DoseEdge intercepts a potential medication error. (DoseEdge Brochure at 3).

### BD's Infringing Product

32. BD is a global medical technology company that manufactures and sells medical supplies, drug delivery systems, laboratory equipment, software solutions, and diagnostic systems.

33. BD has a product line for medication and supply management, which includes Cato.

34. A true and correct copy of a printout of the BD Cato Website located at http://www.bd.com/en-us/offerings/capabilities/medication-and-supply-

management/medication-and-supply-management-technologies/pyxis-medication-technologies/bd-cato-medication-workflow-solutions, as accessed on October 24, 2017, is attached hereto as Exhibit G.

35. BD claims that Cato standardizes compounding processes such as order review, medication picking, and dose preparation to improve medication safety and pharmacy workflow. (Ex. G, BD Cato Website at p. 106).

36. Cato includes gravimetric verification, barcode automation, electronic documentation, and health information technology interoperability. (*Id.*).

37. Cato includes a workstation for preparing a medical dose that has a base.



(Ex. G, BD Cato Website at p. 124).

38. Cato includes a workstation for preparing a medical dose that has an imaging device.



(Ex. G, BD Cato Website at p. 106).

39. Cato includes a workstation for preparing a medical dose that has a scale.



(Ex. G, BD Cato Website at p. 124).

40. The Cato imaging device is connected to a processor that captures the image of a medical dose being prepared.



(http://www.bd.com/en-us/company/video-gallery?video=4385052097001 ("BD Cato Video"), accessed on October 24, 2017, at 2:58).

41. The Cato scale is connected to a processor that records the weight of a medical dose being prepared.



(Ex. G, BD Cato Website at p. 118).

42. On information and belief, the Cato processor captures the image and records the weight at substantially the same time.

43. A true and correct copy of the pdf BD Cato Technical Workflow that was downloaded from https://www.bd.com/documents/brochures/medication-supply-management/DI_BD-Cato-technical-workflow_BR_EN.pdf, accessed on October 24, 2017, is attached hereto as Exhibit H.

44. On information and belief, Cato stores the captured image and the recorded weight to a memory associated with the processor.



(Ex. H, BD Cato Technical Workflow at p. 131; *see also* https://msdn.microsoft.com/en-us/library/ms143760(v=sql.105).aspx, accessed on October 24, 2017, describing the capabilities of the Microsoft SQL Server).

45. A pharmacist can review the captured images and recorded weights to verify that each of the medical dose preparation steps was properly completed.



(BD Cato Video at 2:52).

46. BD filed U.S. Patent Application No. 14/847,508 ("the '508 Application") on September 8, 2015, which published as U.S. Patent Application Publication No. US 2016/0072985 A1.

47. The '508 Application is directed to the functionality of Cato.

48. During the prosecution of the '508 Application, BD submitted an IDS citing the '579 Patent. (*See* Information Disclosure Statement by Applicant submitted on June 30, 2016, in U.S. Patent Application No. 14/847,508).

49. The '508 Application describes "a system for preparing a pharmaceutical compound," where the system has "a scale operatively connected to the at least one processor; and an image capture device operatively connected to the at least one processor and the scale and positioned to capture an image of at least one of a component used in preparing the pharmaceutical compound and the pharmaceutical compound." (U.S. Patent Application Publication No. US 2016/007298 A1 at ¶0009).

50. The '508 Application describes that after the weight and image are captured, "the system automatically awaits authorization from a pharmacist to precede [sic]." (*Id*. at ¶0052).

51. On information and belief, after the weight and image are captured, Cato automatically awaits authorization from a pharmacist to proceed.

52. On information and belief, BD manufactures Cato in the United States.

53. On information and belief, BD imports Cato into the United States.

54. On information and belief, BD tests Cato in the United States.

55. On information and belief, BD markets Cato in the United States.

56. On information and belief, BD offers Cato for sale in the United States.

57. On information and belief, BD sells Cato in the United States.

# **FIRST CAUSE OF ACTION**

## **(Infringement of the '579 Patent)**

58. Baxter incorporates by reference and realleges each and every allegation of Paragraphs 1 through 57 as if set forth herein.

59. The '579 Patent is generally directed to a system "for preparing and managing patient-specific dose orders." (Ex. A, '579 Patent at Abstract). The system of the '579 Patent captures images of the dose order preparation steps, stores those images, allows access to those images for review and verification, and allows for the approval and release of the dose order. (*Id*. at cl. 8).

60. BD directly infringes, induces others to infringe, and/or contributorily infringes at least claim 8 of the '579 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling (directly or through intermediaries), and/or importing Cato in this Judicial District and elsewhere in the United States.

COMPLAINT
-11-

61. A representative chart comparing the limitations of claim 8 of the '579 Patent and Cato is attached as Exhibit I.[1]

62. Baxter is not asserting the method claims of the '579 Patent, which include claims 1–7.

63. As described in Baxter's representative claim chart attached as Exhibit I, BD's manufacture, use, sale, offer to sell, and/or importation of Cato directly infringes the '579 Patent in violation of 35 U.S.C. § 271(a).

64. BD's infringement of the '579 Patent has caused and will cause Baxter to suffer substantial and irreparable harm.

65. BD's infringement of the '579 Patent will result in loss of market share for Baxter's DoseEdge. Such losses cannot be adequately compensated for in money damages.

66. BD's infringement of the '579 Patent will expose Baxter to loss of pricing discretion for DoseEdge and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

67. BD's infringement of the '579 Patent has disrupted, and will disrupt, Baxter's customer relationships. Such disruption will result in the formation of customer relationships between BD and Baxter's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

---

[1] The claim charts provided in Exhibits I through K were prepared without the benefit of discovery and are based on Baxter's current knowledge. The claim charts are included for exemplary purposes and in no way should the citations therein be construed as limiting. Baxter reserves the right to supplement the claim charts in accordance with local rules and/or the court scheduling order.

## SECOND CAUSE OF ACTION

## (Infringement of the '693 Patent)

68. Baxter incorporates by reference and realleges each and every allegation of Paragraphs 1 through 57 as if set forth herein.

69. The '693 Patent is generally directed to "work stations for use in medical dose preparation management system." (Ex. B, '693 Patent at Abstract). The system of the '693 Patent is used to manage medical dose preparation and has an imaging system for capturing the preparation, a processor to store the images, and a scale that is used to perform a gravimetric analysis, where the processor associatively captures and stores the image and weight of the medical dose preparation. (*Id*. at cl. 1).

70. BD directly infringes, induces others to infringe, and/or contributorily infringes at least claim 1 of the '693 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling (directly or through intermediaries), and/or importing Cato in this Judicial District and elsewhere in the United States.

71. A representative chart comparing the limitations of claim 1 of the '693 Patent and Cato is attached as Exhibit J.

72. As described in Baxter's representative claim chart attached as Exhibit J, BD's manufacture, use, sale, offer to sell, and/or importation of Cato directly infringes the '693 Patent in violation of 35 U.S.C. § 271(a).

73. BD's infringement of the '693 Patent has caused and will cause Baxter to suffer substantial and irreparable harm.

74. BD's infringement of the '693 Patent will result in loss of market share for Baxter's DoseEdge. Such losses cannot be adequately compensated for in money damages.

75. BD's infringement of the '693 Patent will expose Baxter to loss of pricing discretion for DoseEdge and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

76. BD's infringement of the '693 Patent has disrupted, and will disrupt, Baxter's customer relationships. Such disruption will result in the formation of customer relationships between BD and Baxter's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

### THIRD CAUSE OF ACTION

**(Infringement of the '273 Patent)**

77. Baxter incorporates by reference and realleges each and every allegation of Paragraphs 1 through 57 as if set forth herein.

78. The '273 Patent is generally directed to "work stations for use in medical dose preparation management system." (Ex. C, '273 Patent at Abstract). The system of the '273 Patent is used to manage medical dose preparation and has an imaging system for capturing the preparation, a processor to store the images, and a scale that is able to communicate with the system to allow for weight and images to be stored associatively in the processor's memory. (*Id.* at cl. 1).

79. BD directly infringes, induces others to infringe, and/or contributorily infringes at least claim 1 of the '273 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling (directly or through intermediaries), and/or importing Cato in this Judicial District and elsewhere in the United States.

80. A representative chart comparing the limitations of independent claim 1 of the '273 Patent and BD's Cato is attached as Exhibit K.

81. As described in Baxter's representative claim chart attached as Exhibit K, BD's manufacture, use, sale, offer to sell, and/or importation of Cato directly infringes the '273 Patent in violation of 35 U.S.C. § 271(a).

82. BD's infringement of the '273 Patent has caused and will cause Baxter to suffer substantial and irreparable harm.

83. BD's infringement of the '273 Patent will result in loss of market share for Baxter's DoseEdge. Such losses cannot be adequately compensated for in money damages.

84. BD's infringement of the '273 Patent will expose Baxter to loss of pricing discretion for DoseEdge and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

85. BD's infringement of the '273 Patent has disrupted, and will disrupt, Baxter's customer relationships. Such disruption will result in the formation of customer relationships between BD and Baxter's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

## PRAYER FOR RELIEF

WHEREFORE, Baxter requests that:

A. The Court find that BD has directly infringed, induced others to infringe, and/or contributorily infringed the Patents-in-Suit and hold BD liable for such infringement;

B. The Court issue an order pursuant to 35 U.S.C. § 283 permanently enjoining BD, and anyone acting or participating by, through or in concert with BD, from infringing, contributing to, and/or inducing infringement of Patents-in-Suit;

C. The Court award damages pursuant to 35 U.S.C. § 284 adequate to compensate Baxter for BD's past infringement of the Patents-in-Suit, including both pre- and post-judgment interest and costs as fixed by the Court;

D. The Court declare that this is an exceptional case entitling Baxter to its reasonable attorneys' fees under 35 U.S.C. § 285;

E. The Court award Baxter its costs and reasonable attorneys' fees; and

F. The Court award such other relief as the court may deem just and proper.

| | | |
|---|---|---|
| 1 | Dated: October 26, 2017 | Respectfully submitted, |
| 2 | | |
| 3 | | By: /s/ Christina N. Goodrich |
| 4 | | Christina N. Goodrich (SBN 261722) |
| 5 | | christina.goodrich@klgates.com<br>**K&L Gates LLP** |
| 6 | | 10100 Santa Monica Boulevard, 8th Floor |
| 7 | | Los Angeles, California 90067<br>Telephone: +1 310.552.5000 |
| 8 | | Facsimile: +1 310.552.5001 |
| 9 | | George C. Summerfield (*Pro Hac Vice* |
| 10 | | pending)<br>george.summerfield@klgates.com |
| 11 | | Benjamin E. Weed (*Pro Hac Vice* pending) |
| 12 | | benjamin.weed@klgates.com<br>Devon C. Beane (*Pro Hac Vice* pending) |
| 13 | | devon.beane@klgates.com |
| 14 | | Katherine L. Hoffee (*Pro Hac Vice* pending)<br>katy.hoffee@klgates.com |
| 15 | | **K&L Gates LLP** |
| 16 | | 70 West Madison Street, Suite 3300<br>Chicago, Illinois 60602 |
| 17 | | Telephone: +1 312.372.1121 |
| 18 | | Facsimile: +1 312.827.8000 |
| 19 | | *Attorneys for Plaintiffs Baxter Healthcare* |
| 20 | | *Corporation and Baxter Corporation*<br>*Englewood* |

# **DEMAND FOR JURY TRIAL**

Plaintiffs Baxter Healthcare Corporation and Baxter Corporation Englewood hereby demands a trial by jury on every issue on which they are so entitled.

Dated: October 26, 2017

Respectfully submitted,

By: /s/ Christina N. Goodrich

Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
**K&L Gates LLP**
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: +1 310.552.5000
Facsimile: +1 310.552.5001

George C. Summerfield (*Pro Hac Vice* pending)
george.summerfield@klgates.com
Benjamin E. Weed (*Pro Hac Vice* pending)
benjamin.weed@klgates.com
Devon C. Beane (*Pro Hac Vice* pending)
devon.beane@klgates.com
Katherine L. Hoffee (*Pro Hac Vice* pending)
katy.hoffee@klgates.com
**K&L Gates LLP**
70 West Madison Street, Suite 3300
Chicago, Illinois 60602
Telephone: +1 312.372.1121
Facsimile: +1 312.827.8000

*Attorneys for Plaintiffs Baxter Healthcare Corporation and Baxter Corporation Englewood*