UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAXTER HEALTHCARE CORPORATION and BAXTER CORPORATION ENGLEWOOD,<br><br>Plaintiffs,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY<br><br>Defendant. | Case No.: 3:17-cv-2186 JLS-RBB<br><br>**ORDER DENYING MOTION TO LIFT STAY AS TO U.S. PATENT NO. 8,554,579**<br><br>(ECF No. 72) |

Presently before the Court is Plaintiffs Baxter Healthcare Corporation and Baxter Healthcare Englewood's Motion to Lift Stay Regarding U.S. Patent No. 8,554,579. ("Mot.," ECF No. 72). Also before the Court is Defendant Becton, Dickinson and Company's Opposition to the Motion ("Opp'n," ECF No. 73) and Plaintiffs' Reply in Support of the Motion, ("Reply," ECF No. 76). The Court took this matter under submission without oral argument. *See generally* ECF No. 77. Having carefully considered the Parties' arguments and the relevant law, the Court **DENIES** Plaintiffs' Motion to Lift Stay.

1

## BACKGROUND

Plaintiffs develop and manufacture renal and medical products, including pharmacy automation, software and services, acute renal care, home and in-center dialysis, sterile IV solutions, infusion systems and devices, parenteral nutrition, biosurgery products and anesthetics, and perioperative care. Complaint ("Compl.," ECF No. 1) ¶ 26. Defendant is "a global medical technology company that manufactures and sells medical supplies, drug delivery systems, laboratory equipment, software solutions, and diagnostic systems." *Id.* ¶ 32. Plaintiffs are both the assignee and owner of three United States patents: No. 8,554,579 (the '579 patent), issued October 8, 2013, *id.* ¶ 17; Ex. A, ECF No. 1-3; No. 9,474,693 (the '693 patent), issued October 25, 2016, Compl. ¶ 18; Ex. B, ECF No. 1-4; and No. 9,662,273 (the '273 patent), issued May 30, 2017, Compl. ¶ 19; Ex. C, ECF No. 1-5.

The '579 patent generally claims a "management of medication dose orders and medication dose preparation," and, more specifically, "remote dose inspection for facilitating the practice of telepharmacy." Ex. A at 1:14–20. The '579 specification explains that "a pharmacist by law has to approve each drug order before it can be released and delivered to a patient," *id.* at 3:6–7, and States impose a variety of regulations for "the level of supervision required by a pharmacist in monitoring and approving drugs prepared by others," *id.* at 3:8–12. Generally, pharmacists "may be able to approve a drug order and release it even if the pharmacist is in a different room of the same building," *id.* at 3:12–14, but an issue arises when a "pharmacist is temporarily unavailable," *id.* at 3:20. The '579 patent addresses this issue by "provid[ing] a portal for remote inspection of prepared doses and thus facilitat[ing] the practice of telepharmacy, by which a pharmacist can inspect the dose preparation from any location inside the hospital or elsewhere so that doses are released more quickly and efficiently." *Id.* at 20:58–63.

The '693 patent shares the same specification with its continuation, the '273 patent. Similar to the '579 patent, the '693 and '273 patents generally cover "[e]mbodiments of medical dose preparation management systems that may assist in management of medical

1  doses." Ex. C at 2:38–39. The common specification explains that "medical doses may
2  be required to be verified by a pharmacist prior to being dispensed from the pharmacy for
3  administration to a patient." *Id.* at 1:39–41. A problem arises when a pharmacist must
4  "physically observe the materials associated with the dose order" because the pharmacist
5  may need to enter a "clean room" to verify the dose preparation. *Id.* at 1:54–56.

## PROCEDURAL BACKGROUND

On October 26, 2017, Plaintiffs filed a Complaint alleging infringement of the '579, '693, and '273 patents. *See generally* ECF No. 1. On November 12, 2018, Defendant filed a Motion to Stay pending the Patent Trial and Appeal Board's ("PTAB") resolution of inter partes review ("IPR") petitions filed by Defendant on the three patents. *See generally* ECF No. 45. Plaintiffs initially filed an Opposition, *see generally* ECF No. 54, and Defendant filed a Reply, *see generally* ECF No. 57. However, on May 3, 2019, the PTAB issued decisions instituting trial on all claims challenged in the three IPR petitions. *See* ECF No. 68 at 1. Based on these developments, Plaintiffs did not oppose a renewed Motion to Stay this action. *Id.* On May 20, 2019, Defendant filed a renewed unopposed Motion to Stay pending IPR "through final exhaustion of the IPR proceeding, including any appeal." *Id.* The Court granted Defendant's Unopposed Motion to Stay conditioned on the exhaustion of any appeals. *See generally* ECF No. 69.

The PTAB issued its Final Written Decision on May 3, 2019, concluding that all claims of the '579 Patent were patentable and that the '693 and '273 patents were unpatentable. Mot. at 2–3. The Parties have now appealed all three of the PTAB's decisions. *See* Opp'n at 7 (citing *Becton, Dickinson & Co. v. Baxter Corp. Englewood*, No. IPR2019-00121, Paper 64 (P.T.A.B. May 11, 2020); *Becton, Dickinson & Co. v. Baxter Corp. Englewood*, No. IPR2019-00120, Paper 64 (PTAB May 11, 2020); *Becton, Dickinson & Co. v. Baxter Corp. Englewood*, No. IPR2019-00119, Paper 52 (P.T.A.B. June 18, 2020)). Plaintiffs now file this instant Motion seeking to lift the stay as to the '579 patent only. *See generally* Mot.

///

**LEGAL STANDARD**

"[A] court that imposes a stay of litigation has the inherent power and discretion to lift the stay." *Ho Keung Tse v. Apple, Inc.*, No. C 06-06573 SBA, 2013 WL 5302587, at *2 (N.D. Cal. Sept. 19, 2013) (quoting *Canady v. Erbe Elektromedizin GMBH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002)). "A court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (citing *Canady*, 271 F. Supp. 2d at 74). When determining whether to lift a stay, the court analyzes the same three-factor test which informed whether the stay was appropriate in the first place: "(1) whether discovery is complete and whether a trial has been set; (2) whether a stay will simplify the issues in question and trial of a case; and (3) whether the stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. 5:12-CV-04958-PSG, 2015 WL 1538259, at *3 (N.D. Cal. Apr. 6, 2015). In addition to these factors, a court should consider the "totality of the circumstances." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013) (citing *Allergan Inc. v. Cayman Chem. Co.*, No. SACV 07–01316 JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009)).

**ANALYSIS**

**I.      Stage of the Proceedings**

The Court finds the early stage in the proceedings weighs against lifting the stay. If discovery has not been completed and a trial date has not been set, the first factor typically weighs against lifting the stay. *Smart Modular Techs., Inc. v. Netlist, Inc.*, No. 212CV02319TLNEFB, 2016 WL 5159524, at *2 (E.D. Cal. Sept. 21, 2016); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation).

When the Court granted the stay in this case on May 21, 2019, the litigation had not progressed past the early stages. *See generally* ECF No. 69. This has not changed during

the duration of the stay.  Little discovery has been completed in this case, the Court has not yet issued a scheduling order, and the Court has not held an Early Neutral Evaluation Conference.  Opp'n at 13 (citing ECF No. 57 at 2); *see Robert Bosch Healthcare Sys., Inc. v. Cardiocom LLC*, No. 14-CV-01575-EMC, 2017 WL 6939167, at *1 (N.D. Cal. Mar. 16, 2017) (finding the first factor "necessarily favors maintaining the stay, as the case has been frozen at the same early stage it was at when the Court first entered the stay"); *Evolutionary Intelligence, LLC v. Livingsocial, Inc.*, No. 13-CV-04205-WHO, 2014 WL 2735185, at *2 (N.D. Cal. June 16, 2014) (finding the first factor favored the stay because only limited discovery had occurred, no pretrial dates had been scheduled, and no claim construction or other substantive briefs had been filed or scheduled).

Accordingly, the first factor disfavors lifting the stay as this case is still in the early stages.

## II.  Simplification of Issues

The Court finds lifting the stay at this juncture could introduce complications into the case, and therefore this factor weighs against lifting the stay.  "One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

The Federal Circuit's decision of the appeal as to all three patents will simplify the issues at trial.  The Federal Circuit's review could render the entirety of the Plaintiffs' case moot if the court finds that the PTAB erred in its findings on the '573 patent while affirming the PTAB's findings of invalidity on the other two patents.  Alternatively, if the Federal Circuit finds one or both of the other patents to be valid and enforceable, the potential for separate infringement suits of related technology in this Court will duplicate the discovery process and expend unnecessary resources.  *See, e.g.*, *Evolutionary Intelligence*, 2014 WL 2735185, at *3 (concluding that, where the patents are related, "[l]itigating the . . . '682 patent now and the '536 patent following resolution of the IPR would be inefficient and

may result in duplication of effort"); *Sonics, Inc. v. Arter is, Inc.*, 2013 WL 503091, at *3 (N.D. Cal. Feb. 8, 2013) ("When there are overlapping issues between the reexamined patents and other non-reexamined patents-in-suit, courts have found that staying the entire case is warranted."); *Methode Elec., Inc. v. Infineon Technologies Corp.*, 2000 WL 35357130, at *3 (N.D. Cal. Aug. 7, 2000) ("Duplicative discovery may result if only the '408 patent is stayed since there are likely to be common documents and witnesses regarding the infringement litigation of the '408 and '468 patents."); *Pragmatus Telecom, LLC v. NETGEAR, Inc.*, 2013 WL 2051636, at *2 (N.D. Cal. May 14, 2013) ("[A] stay request is not contingent upon the reexamination proceeding being coterminous and resolving every claim and issue in this action.  Rather, the salient question is whether the reexamination will aid the Court or otherwise streamline the litigation.").

Plaintiffs argue that the Federal Circuit has a high affirmance rate of PTAB decisions, and therefore the potential outcome of the appeal is too speculative to justify a stay.  Mot. at 7.  Some courts have found this argument to be persuasive.  *See Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, No. CV 14-1430-LPS-CJB, 2018 WL 1061370, at *2 (D. Del. Feb. 26, 2018) ("[W]hile it is of course possible that the Federal Circuit will come to a different conclusion than did the PTAB, the 'mere *possibility* (as opposed to "reasonable likelihood") that the asserted claims could be invalidated [after an] appeal and [that this would] result in simplification is too speculative to be given much weight.'" (quoting *Network–1 Sec. Sols., Inc. v. Alcatel–Lucent USA Inc.*, CASE NO. 6:11CV492, 2015 WL 11439060, at *3 (E.D. Tex. Jan. 5, 2015) (emphasis and alterations in original))).  Although the Federal Circuit's affirmance of the PTAB decisions may be statistically more likely, this outcome is far from a foregone conclusion.  In addition to the possibility that any one or more of the PTAB decisions may be overturned, there are other benefits to continuing the stay through the pendency of the appeal.  For example, the Federal Circuit's de novo review of the PTAB's claim constructions of the patents-in-suit may also provide guidance that will further simplify the issues before this Court.  *See In re Ameranth Patent Litig. Cases*, No. 11CV1810 DMS (WVG), 2015 WL 12868116, at *2 (S.D. Cal. June 4,

2015) ("[I]t makes little sense to have the parties engage in claim construction discovery and briefing, and for the Court to construe claims, when the Federal Circuit may undertake that same task in considering the parties' appeals.").

The Court finds lifting the stay has the potential to create duplicative discovery and introduce inefficiencies into the case.  Therefore, this factor weighs against lifting the stay.

### III.   Undue Prejudice

Finally, the Court finds that maintaining the stay will not present a clear disadvantage to either party, so this factor remains neutral.  "[D]elay by itself does not necessarily constitute undue prejudice, as nearly every judicial stay involves delay. However, even if such already-occurred delay is not given any weight in this analysis, the additional delay that would be incurred by continuing the stay pending exhaustion of appeals is significant." S*mart Modular Techs., Inc.*, 2016 WL 5159524, at *3.

Although Plaintiffs argue that their damages from loss of market share and opportunities are not readily calculable monetary damages, Mot. at 8, Plaintiffs never sought a preliminary injunction in this case.  *See Palomar Techs., Inc. v. Mrsi Sys., LLC*, No. 15-CV-1484 JLS (KSC), 2016 WL 4496839, at *2 (S.D. Cal. June 14, 2016) ("Plaintiff's failure to pursue a preliminary injunction undermines its position that monetary damages are insufficient.").  It is true that delaying the suit could limit Plaintiffs' time to recoup their investment in the '579 patent if the Federal Circuit affirms its validity and this Court finds infringement, but the Court finds that Plaintiffs can be adequately compensated by monetary damages for any harm suffered from a continued stay.  *Compare Smart Modular Techs., Inc.*, 2016 WL 5159524, at *4 ("[T]he Court agrees that 'any undue delay in enjoining infringing conduct could cause [the plaintiff] to miss its window for financially capitalizing on its own patented technology.'" (citations omitted)) *with Teva Pharm. Int'l GmbH v. Eli Lilly & Co.*, No. 18-CV12029-ADB, 2019 WL 1767394, at *8 (D. Mass. Apr. 22, 2019) (concluding a stay was warranted, even where the parties were competitors, because there was "no indication" that a stay would cause plaintiff "to lose any presently available legal remedies").

7

While continuing the stay during the pendency of appeal to the Federal Circuit will increase the duration of the stay, *see* Mot. at 10, the possibility of appeals from the IPR decisions was expressly contemplated by the parties, Opp'n at 5–6.  Significantly, the unopposed motion to stay and the Court's order granting the motion conditioned the stay on the resolution of any appeal.  *See* ECF No. 69 at 1 ("The stay will automatically extend through final exhaustion of the IPR proceeding, including any appeal."); *but cf. Smart Modular Techs., Inc.*, 2016 WL 5159524, at *3 (lifting stay when the order granting the initial stay was not conditioned on any exhaustion of appeals).  The Court is not persuaded by Plaintiffs' present argument when Plaintiffs had the opportunity to file an opposition to Defendant's motion for a stay pending IPR including appeals and chose not to do so.  *Compare* ECF No. 45, *with* ECF No. 72.  The circumstances under which the Court granted the stay have not changed significantly.  *Akeena Solar Inc. v. Zep Solar Inc.*, No. C 09-05040 JSW, 2011 WL 2669453, at *2 (N.D. Cal. July 7, 2011) ("Here, litigation is still in its early stages, and the pending reexamination request may eliminate the need for trial completely.  Thus lifting the stay would be premature, because the circumstances that led this Court to grant the stay have not changed significantly.").  Therefore, the Court finds this factor is neutral.

Considering the totality of the circumstances, the Court finds that the three factors weigh in favor of continuing the stay as to the '579 Patent through completion of the IPR proceedings, including the pendency of any appeal.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Lift the Stay as to the '579 Patent.

**IT IS SO ORDERED.**

Dated:  January 4, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge